# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-1648

_____

Gerald R. Tlamka, as special    *
administrator for the estate of Frank    *
J. Tlamka, deceased,    *

       *

          Appellant,    *

   *    Appeal from the United States

    v.    *    District Court for the

   *    District of Nebraska.

Otha Lee Serrell; Michael T.    *
Lichtenfeld; Michelle D. Williams;    *
Frank X. Hopkins; Harold W.    *
Clarke,    *

       *

          Appellees.    *

_____

Submitted: October 23, 2000
Filed: March 23, 2001 (corrected 4/2/01)

_____

Before McMILLIAN, ROSS, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Plaintiff, Gerald R. Tlamka, brings this action pursuant to 42 U.S.C. § 1983 on behalf of his father's estate. Plaintiff's father, Frank J. Tlamka (Tlamka), was incarcerated at the Nebraska State Penitentiary (NSP) from December 2, 1994, through July 1, 1995, the date on which he suffered a heart attack and later died. Plaintiff

alleges that corrections officers Otha Serrell, Michael Lichtenfeld, and Michelle Williams violated Tlamka's Eighth Amendment rights by deliberately refusing and delaying emergency medical treatment during his heart attack. Plaintiff further claims Frank Hopkins, NSP Warden, and Harold Clarke, Director of the Nebraska Department of Correctional Services, failed to train the corrections officers, thus causing a deprivation of Tlamka's constitutional rights. The district court granted summary judgment in favor of all defendants, concluding they were entitled to qualified immunity, and plaintiff now appeals. We affirm the district court's decision as to Hopkins and Clarke but reverse and remand as to the claims against the corrections officers.

## I.

The record upon which the district court based its summary judgment ruling is comprised almost entirely of affidavits by prisoners and corrections officers present at the time Tlamka collapsed in the prison yard. From these accounts, we discern the following facts relevant to whether defendants are entitled to summary judgment based on qualified immunity. At approximately 1:00 p.m. on July 1, 1995, Tlamka suffered a heart attack and collapsed in the NSP prison yard. A nearby inmate ran to notify a corrections officer that he thought Tlamka was having a heart attack. Two other inmates rushed to the unconscious Tlamka and attempted to locate his pulse. Unable to find one and noting that Tlamka was turning bluish in color, the inmates immediately began cardiopulmonary resuscitation (CPR). One of the inmates had previously received CPR training, while a third inmate who was knowledgeable in proper CPR techniques provided instruction. The inmates continued CPR for approximately one to five minutes and began to see positive results--Tlamka regained a more normal color, his eyes opened, and his chest began to heave as if he was struggling to catch his breath on his own.

The affidavit accounts of what next transpired substantially conflict and differ. According to the inmates, corrections officers Lichtenfeld, Williams, and Serrell arrived on the scene, at which time Officer Serrell immediately ordered the inmates to cease administering CPR.[1] Despite the order, the inmates continued to perform CPR but were again ordered by Serrell to cease and to clear the area. Upon the second order, the inmates desisted reluctantly and with objection, both from the inmates performing the CPR and from other inmates who had gathered at the scene. The inmate providing the CPR instruction argued with the corrections officers that it was imperative that CPR be continued.

Tlamka's condition deteriorated immediately after the inmates ceased CPR--as one inmate describes, Tlamka again turned blue, and his chest began "hitching." According to the inmates' sworn accounts, although Tlamka was in dire distress, none of the corrections officers approached him to check his pulse nor did they continue the CPR begun by the inmates. Sometime later, other corrections officers arrived with a gurney to transport Tlamka to the turnkey area, located approximately 50 feet from where he had collapsed, where a prison nurse was waiting to render aid. By the time the gurney arrived, Tlamka had turned a darker shade of blue and purple. As he was transported to the turnkey area, the officers walked at a normal pace and did not provide Tlamka with any medical attention. Upon his arrival, the awaiting nurse initiated CPR, which was continued until an ambulance arrived and transported Tlamka to the local hospital. Tlamka never regained consciousness and later died at the hospital.

---

[1] The inmate accounts are not entirely consistent or clear on the sequence in which Serrell, Lichtenfeld, and Williams arrived. In fact, inmate Rodney Porter contends that Officer Lichtenfeld arrived first and issued the order to discontinue CPR; the complaint alleges it was Serrell. Based on the inmate accounts, we find a reasonable fact finder could infer that all three officers arrived on the scene either together or shortly after the order was issued.

3

The inmates offer a range of estimates as to how long Tlamka went without CPR after Serrell issued the order to the inmates to cease CPR. The consensus, as the district court noted, is that a two- to five-minute delay occurred between issuance of the order and the time when Tlamka reached the turnkey area where the nurse resumed CPR. Inmate Rodney Porter contended in his affidavit that there was a ten-minute delay during the same period. He also stated, as did the other inmates, that none of the corrections officers performed CPR nor attempted to administer any other type of medical attention to Tlamka prior to his arrival in the turnkey area.

Defendants offer affidavits from Serrell, Williams, and another corrections officer in support of summary judgment. None denied in the affidavits that an order was issued directing the inmates to cease CPR. Serrell contended, however, that Lichtenfeld relieved one of the inmates who was performing CPR immediately after he arrived on the scene. He also contended that CPR was continued as Tlamka was transported to the turnkey area. In addition, the corrections officers' accounts of the incident do not support inmate Porter's claim that 10 minutes passed before Tlamka arrived in the turnkey area. Serrell, in particular, stated that approximately three minutes passed from the time he arrived on the scene to the time Tlamka arrived in the turnkey area.

Consequently, there are two important areas of factual dispute raised by the dueling affidavits. Was the administration of CPR to Tlamka stopped by the officers, and, if so, how much time did it take to get Tlamka to where the prison nurse could tend to the emergency?

II.

The district court concluded in ruling on defendants' motion for summary judgment that it was not clearly established at the time of Tlamka's heart attack that a corrections officer may violate an inmate's Eighth Amendment rights by temporarily

4

halting CPR. The court therefore granted summary judgment on qualified immunity grounds. Plaintiff argues on appeal that the district court failed to view the record in his favor and that the court's qualified immunity determination was erroneous. We review de novo a district court's grant of qualified immunity on summary judgment. Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether defendants are entitled to summary judgment, we view the summary judgment record in a light most favorable to the plaintiff, the nonmoving party, affording him the benefit of all reasonable inferences. Lambert, 187 F.3d at 934.

A.

Qualified immunity protects a governmental official from suit when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotations omitted). To determine whether an official is entitled to qualified immunity, we apply a two-part inquiry: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, . . . whether that right was clearly established at the time of the alleged violation." Id. at 609 (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)); see also Sexton, 210 F.3d at 909. When applying this inquiry at the summary judgment stage, the official's conduct must be viewed through the prism of Rule 56--that is, we must take as true those facts asserted by plaintiff that are properly supported in the record. See Behrens v. Pelletier, 516 U.S. 299, 309 (1996); see also Gregoire v. Class, No. 00-1255, 2000 WL 1880249, at *2

5

(8th Cir. Dec. 29, 2000) ("[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." (brackets in original) (quoting Lambert, 187 F.3d at 935)).  Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law.  Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000).

B.

We turn first to plaintiff's claims against Officers Serrell, Williams, and Lichtenfeld.  Before reaching the question of whether the district court correctly determined that the law was not clearly established, we determine whether plaintiff has set forth sufficient evidence to support a finding that the corrections officers violated Tlamka's constitutional rights at all.  The Eighth Amendment prohibits prison officials' cruel and unusual punishment of inmates, and it has been interpreted as obligating prison officials to provide medical care to inmates in their custody.  See Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).  An inmate's right to medical care is violated if a prison official's conduct amounts to a "deliberate indifference to [the prisoner's] serious medical needs."  Dulany v. Carnahan, 132 F.3d 1234, 1237-38 (8th Cir. 1997) (brackets in original) (quoting Estelle, 429 U.S. at 104).  There is both an objective and subjective component to a claim of deliberate indifference.  A plaintiff must demonstrate "(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."  Id. at 1239.

With this standard in mind, we conclude that plaintiff has presented sufficient facts, viewing the record in the light we must, to establish an underlying violation of Tlamka's Eighth Amendment rights.  "It is well settled that an intentional delay in obtaining medical care for a prisoner who needs it may be a violation of the eighth amendment."  Ruark v. Drury, 21 F.3d 213, 216 (8th Cir.), cert. denied, 513 U.S. 813 (1994).  For delay to rise to an actionable Eighth Amendment violation, however, the information available to the prison official must be such that a reasonable person would

6

know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate.  Id.

Based on the obvious and serious nature of Tlamka's condition, the corrections officers' alleged failure to even approach Tlamka during the maximum 10-minute period would rise to a showing of deliberate indifference.  None of the parties dispute that Tlamka's medical condition was objectively serious nor that it was obvious to those present at the scene that his condition was life threatening.  Nevertheless, according to the plaintiff's witnesses, the corrections officers failed to provide CPR or approach Tlamka for a period of 10 minutes (albeit that time estimate is provided by only one inmate) even though all three officers were trained to provide CPR.[2]  The officers' alleged inaction occurred even though they were presumably aware that Tlamka had been responding favorably to the CPR provided by the inmates, and an inmate told them that it was essential that CPR be continued under the circumstances.  This alleged failure to act given the patent nature of Tlamka's condition, considering the corrections officers' ability to provide CPR, is conduct sufficiently severe to evidence an Eighth Amendment violation.[3]  See Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)

---

[2]Defendants' counsel conceded at oral argument that the three officers received CPR instruction, and Warden Hopkins stated in his affidavit that all corrections officers receive CPR instruction as part of their initial training.  The training is updated as necessary by an NSP training specialist.  In addition, NSP regulations specifically provided at the time of Tlamka's heart attack that at least one on-duty corrections officer was to be trained in basic life-support measures and was to respond to the scene of any medical emergency immediately.  (J.A. at 67.)  Williams was the designated responding officer on the day of Tlamka's heart attack.

[3]The district court concluded that, at most, there was a five-minute delay in CPR and that "[i]t [was] undisputed that these five crucial minutes were not idle time." (Appellant's Add. at 8.)  We respectfully disagree with the district court's view of the record because it appears to overlook the affidavit of inmate Rodney Porter and the reasonable inferences to be drawn from it, and the affidavits of other inmates who

7

(observing that sufficiently harmful omissions in medical care are sufficient to evidence deliberate indifference). The record contains no explanation for the purported delay in CPR, and thus, under the facts as presented on summary judgment, we cannot say that as a matter of law the officers were not deliberately indifferent in responding to Tlamka's heart attack.[4] Cf. Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000) (recognizing that a prison official is entitled to qualified immunity if he knew of a substantial risk of harm to inmate health or safety but responded reasonably to the risk, even though harm was not ultimately averted).

We are somewhat wary of inmate Porter's allegation that the delay was 10 minutes long and of the almost unthinkable suggestion that the officers were doing nothing to assist Tlamka during that time. At this stage of the litigation, however, we must accept the facts as recited in the affidavits filed by the prisoners as true. See Grossman v. Dillard Dep't Stores, Inc., 47 F.3d 969, 971 (8th Cir. 1995) ("We may neither weigh evidence nor make credibility determinations at the summary judgment stage."). We therefore conclude that plaintiff has met his burden of establishing a genuine issue of material fact as to whether the corrections officers knew of and were deliberately indifferent to Tlamka's medical needs. See Yellow Horse v. Pennington County, 225 F.3d 923, 927 (8th Cir. 2000) (stating that when qualified immunity is claimed, it is a plaintiff's burden to show that a question of fact precludes summary judgment).

Having concluded that plaintiff's complaint and his untested evidence states and supports a valid Eighth Amendment violation against the corrections officers, we

---

claimed the officers provided no assistance during the period CPR was interrupted.

[4]One of the corrections officers stated in his affidavit that a decision was made to transport Tlamka to the turnkey area because inmates were crowding the yard area, creating a security risk. Even so, there is no explanation for why the officers present offered no aid prior to transporting Tlamka.

address whether it was one of clearly established law. To be clearly established the "contours of the right [allegedly violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Buckley v. Rogerson, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "The official is not required to guess the direction of future legal decisions, Mitchell v. Forsyth, 472 U.S. 511, 535, 105 S. Ct. 2806, 2820, 86 L. Ed. 2d 411 (1985), but may rely on preexisting case law for guidance." Buckley, 133 F.3d at 1128. Our circuit subscribes to a "broad view" of what constitutes clearly established law; "[i]n the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts." Id. at 1129 (quoting Norfleet v. Ark. Dep't of Human Servs., 989 F.2d 289, 291 (8th Cir. 1993)).

We are unaware of any decisions involving facts similar to those presented in this case, but that is not dispositive of our inquiry. At the time of Tlamka's heart attack, as we discussed previously, the law in this circuit was settled that an intentional delay in obtaining medical care for an inmate could give rise to a violation. See Ruark, 21 F.3d at 216;[5] cf. Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997) ("The case law also had clearly established before this case arose that an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition

---

[5]Defendants argue the district court correctly concluded that the officers' conduct did not violate clearly established law based on this circuit's decision in Ruark. In Ruark, the court affirmed the trial court's holding that a 20-minute delay in calling an ambulance, without more, was insufficient to give rise to a claim of deliberate indifference. 21 F.3d at 217-18. This case is distinguishable from Ruark because there is no explanation for the officers' alleged failure to render aid to Tlamka during the delay. There was evidence in Ruark, in contrast, establishing that the jailors were unaware of the serious nature of the inmate's condition and that they had no knowledge their delay risked harm to the inmate. Id. at 216.

or an urgent medical condition that would be exacerbated by delay." (citing cases from 1994 or earlier)). While the determination of whether that delay is constitutionally actionable depends on the seriousness of an inmate's medical condition and on the reason for the delay, Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994), we conclude that under the facts we are presented with in this summary judgment appeal, any reasonable officer would have known that delaying Tlamka's emergency medical treatment for 10 minutes, with no good or apparent explanation for the delay, would have risen to an Eighth Amendment violation. Plaintiff's factual assertions, in our view, if proven to be true, would constitute a quintessential case of deliberate indifference to serious medical needs.

## C.

Plaintiff also seeks to hold Hopkins and Clarke liable for the alleged deprivation of Tlamka's medical care on a failure-to-train theory. The district court granted summary judgment on the claim, concluding as a matter of law that the two could not be held liable absent an underlying violation of clearly established law by the corrections officers. Although we reverse as to the corrections officers, Hopkins and Clarke are entitled to summary judgment on their assertion of qualified immunity.

A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). Rather, a supervisor's liability arises if:

> he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

10

Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted).  In this case, plaintiff alleges the officers were inadequately trained to respond to Tlamka's emergency, but the record is void of any facts which would have alerted Hopkins and Clarke that the officers were inadequately trained.  In fact, it is uncontroverted that all NSP new hires are trained in CPR and that the training is updated as necessary.  Based on the record, no reasonable fact finder could conclude that Hopkins and Clarke violated Tlamka's constitutional rights by failing to properly train the corrections officers.  See Davis v. Fulton County, 90 F.3d 1346, 1350 (8th Cir. 1996) ("The non-moving party . . . may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.").

## III.

For these reasons, we affirm the district court's judgment as to Hopkins and Clarke but reverse and remand the deliberate indifference claim against Serrell, Lichtenfeld, and Williams for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.