# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1822

_____

| | |
|---|---|
| Linda Mays, Personal representative of the estate of Steven Anthony Mays, deceased, | * <br> * <br> * <br> * |
| Appellee, | * <br> * |
| v. | * |
| | *    Appeal from the United States |
| H. G. Rhodes, Major, individually and as employee of the Arkansas Department of Corrections; Larry A. Teal, Field Lt., individually and as employee of the Arkansas Department of Corrections; J. Andrews, Sergeant, individually and as employee of the Arkansas Department of Corrections, | *    District Court for the <br> *    Eastern District of Arkansas. <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| Appellants. | * |

_____

Submitted: January 10, 2001
Filed: June 29, 2001

_____

Before RICHARD S. ARNOLD and BOWMAN, Circuit Judges, and KYLE,[1] District
    Judge.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District
of Minnesota, sitting by designation.

BOWMAN, Circuit Judge.

In early November 1996, Steven Mays became an inmate at the East Arkansas Regional Unit. On November 6, he began his first day of work on a hoe squad under the supervision of Sergeant Jeremy Andrews. Steven completed the morning session, took a lunch break, and returned to work for the afternoon session. At mid-afternoon, with the temperature reaching only seventy-two degrees, Steven collapsed. Andrews called for assistance. Lieutenant Larry Teal responded and after investigating Steven's condition called Major Harry Rhodes, who transported Steven to the prison infirmary. After initial treatment and diagnosis, infirmary personnel transferred Steven to a hospital. He never regained consciousness and died later the next day, his death apparently resulting from heat exhaustion.

Linda Mays, the decedent's mother, initiated a § 1983 suit as the personal representative of Steven's estate. She alleged that Rhodes, Teal, and Andrews[2] violated Steven's Eighth Amendment rights by requiring him to continue working after he exhibited signs of heat exhaustion and by delaying medical treatment after he collapsed. The officers argued that qualified immunity shielded them from suit and moved for summary judgment. The District Court denied the officers' claim of qualified immunity, and they appeal. We reverse.

I.

We first consider Linda Mays's argument that we lack jurisdiction to hear this interlocutory appeal. Although the denial of summary judgment generally does not create the finality required for appellate jurisdiction, the Supreme Court has repeatedly instructed that "a district court's denial of a claim of qualified immunity, to the extent

---

[2]The original complaint also named Warden Marvin Evans as a defendant, but the District Court granted his motion to dismiss. That order has not been appealed.

that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); accord Behrens v. Pelletier, 516 U.S. 299, 306 (1996); Johnson v. Jones, 515 U.S. 304, 311 (1995). In adjudicating the officers' claim of qualified immunity in this case, we view the evidence in the light most favorable to Mays, and our decision turns on whether, so viewed, the officers as a matter of law are entitled to qualified immunity. We have jurisdiction to hear this appeal. See McCaslin v. Wilkins, 183 F.3d 775, 778 (8th Cir. 1999); Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998).

II.

Qualified immunity generally shields public officials performing discretionary functions from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We perform a three-part inquiry in order to determine whether a plaintiff's lawsuit can proceed against a defendant public official despite his assertion of qualified immunity at the summary-judgment stage. Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir. 2000); Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, 519 U.S. 1011 (1996). First, the plaintiff must assert a violation of a constitutional or statutory right. Hunter, 219 F.3d at 829. Second, the right allegedly violated must be clearly established. Id. Third, the record, viewed in a light most favorable to the plaintiff, must show genuine issues of material fact as to whether a reasonable official would have known that his course of conduct violated that right. Id. Only after a court determines that each requirement has been satisfied may an official be denied qualified immunity when he seeks summary judgment on that ground.

A.

Because the qualified-immunity question in this case arises at the summary-judgment stage, we "must take as true those facts asserted by [the] plaintiff that are properly supported in the record." Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001); see also Behrens, 516 U.S. at 309 ("On summary judgment . . . the plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the Harlow [qualified immunity] inquiry.") (citation omitted).

The record shows that prior to Steven's collapse, James Mays, Steven's brother who was also incarcerated at the same prison, spoke to Steven during their lunch break. In deposition testimony, James stated that Steven told him that during the morning work session he had been hit in the head with a hoe and had been falling down, but after going to the infirmary he was told that nothing was wrong with him. James Mays's testimony does not provide any indication that Steven complained about any other physical troubles. The record also includes the deposition testimony of Dr. J. R. Barber who examined Steven's medical files and concluded that he likely had to have been "worked to death" in order to have died from heat stroke in seventy-two degree weather. Barber further stated that possible signs of heat stroke include fainting, thirst, fatigue, nausea, vomiting, and headaches, but admitted that he had no way of knowing if any such signs were displayed by Steven.

The record reveals that although Steven was overweight at two hundred eighty pounds and six feet tall, he had been medically cleared, without restriction, for work detail. Andrews, the officer who supervised Steven's hoe squad, provided hourly breaks, during which time inmates could drink water, use the bathroom, smoke, and rest. Andrews testified at his deposition that Steven had not complained of, or displayed, any unusual physical condition prior to his collapse, and he was keeping up with the rest of the squad. After Steven collapsed, Andrews ordered him to get up.

When Steven failed to respond, Andrews promptly called Lieutenant Teal for help.[3] He then ordered another inmate to take water to Steven, but Steven was unable to drink the water.

Teal stated in his deposition testimony that when he arrived he spoke to Steven but received no response. He then put water on Steven in order to cool him off. Still unable to revive Steven, Teal called Major Rhodes for assistance, who arrived approximately five minutes later with a truck. Rhodes testified at his deposition that he placed Steven in handcuffs and transported him to the infirmary. On the way to the infirmary, he radioed the tower to alert infirmary personnel that he was bringing them an inmate in need of medical care. When Rhodes arrived, he helped waiting medical personnel move Steven to a gurney. He then removed the handcuffs from Steven, secured him to the gurney, and left him in the care of medical personnel. Rhodes testified that less than five minutes elapsed between the time he arrived at the scene of Steven's collapse and the time he delivered Steven into medical care at the infirmary.

Linda Mays argues that evidence in the record contradicts the officers' account of the events and supports her allegations that they violated Steven's constitutional rights. Mays heavily relies on an unsigned, handwritten account of the events surrounding Steven's collapse, which Mays contends is from an inmate who witnessed the events. Mays also relies on unsworn accounts found in grievance forms filed by inmates on other work squads the day Steven collapsed.

While we review the record in the light most favorable to Mays as the non-moving party, we do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay. See Fed R. Civ. P. 56(e);

---

[3]Andrews stated that because he was armed, prison safety policies did not permit him to dismount from his horse. When Teal arrived, he gave Andrews his weapon. Andrews then stood watch as Teal investigated Steven's condition.

Cronquist v. City of Minneapolis, 237 F.3d 920, 927 (8th Cir. 2001) (holding that affidavits based on hearsay cannot defeat a summary-judgment motion). The unsworn accounts in question are inadmissible hearsay; moreover, Mays has failed to obtain deposition testimony or affidavits from the inmates who gave these unsworn accounts, and thus she has failed to provide any evidence from these sources that even potentially would be admissible at trial. See Duluth News-Tribune v. Mesabi Publ'g Co., 84 F.3d 1093, 1098 (8th Cir. 1996) ("In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence."); JRT, Inc. v. TCBY Sys., Inc., 52 F.3d 734, 737 (8th Cir. 1995) ("[A] successful summary judgment defense requires more than argument or re-allegation; [the party] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations."); Walker v. Wayne County, Iowa, 850 F.2d 433, 434 (8th Cir. 1988) (holding that courts considering a summary judgment motion "may consider only the portion of the submitted materials that is admissible or usable at trial"), cert. denied, 488 U.S. 1008 (1989). Based on the admissible evidence in the summary-judgment record, the officers' accounts of the events surrounding Steven's collapse stand uncontradicted. We therefore need only address the legal question of whether those facts support a denial of qualified immunity to the officers.

B.

In order to decide whether the officers' actions were objectively reasonable and thus whether they are entitled to qualified immunity, we must examine the underlying rights Mays accuses them of violating. She contends that the record supports two distinct violations of Steven's Eighth Amendment rights. First, she argues that the officials caused Steven's death by working him to the point where he collapsed of heat stroke. Claims that a prisoner's assigned work exceeded his physical capacity are covered under the Eighth Amendment, and require a showing that an official was deliberately indifferent to a known serious medical need. See Choate v. Lockhart, 7 F.3d 1370, 1373-74 (8th Cir. 1993). In this context, deliberate indifference requires

-6-

a showing that Andrews[4] knowingly compelled Steven to perform physical labor that was beyond his strength, dangerous to his health, or unduly painful. Id. at 1374; Williams v. Norris, 148 F.3d 983, 987 (8th Cir. 1998). The record, however, contains no admissible evidence that would show that Andrews knew he was compelling Steven to work in disregard of a known serious medical need. Steven had been medically cleared with no restrictions and the record is devoid of admissible evidence that would show Steven displayed any signs of physical difficulty prior to his collapse that would have alerted Andrews to a medical need. Andrews categorically denies that Steven manifested any such signs. We conclude there are no genuine issues of material fact concerning whether a reasonable official, standing in Andrews's shoes, would have known that his supervision of Steven constituted deliberate indifference to a known medical need.

Linda Mays also alleges that the officers violated Steven's Eighth Amendment rights by improperly treating him following his collapse. The Eighth Amendment "obligat[es] prison officials to provide medical care to inmates in their custody." Tlamka, 244 F.3d at 632-33. In order to demonstrate a violation of Steven's right to medical care, Mays must show that the officers were deliberately indifferent to Steven's serious medical needs. Id. at 633; Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000). Deliberate indifference requires proof that Steven suffered objectively serious medical needs and that the officials actually knew of these needs but deliberately disregarded them. Tlamka, 244 F.3d at 633. There is no question that, at the time of his collapse, Steven required medical attention. The evidence establishes, however, that Andrews responded in a quick, reasonable manner while still maintaining the necessary security of the hoe squad. He promptly called for the assistance of Teal who,

---

[4]The record shows that Teal and Rhodes only became involved after Steven collapsed, and therefore took no actions that exposed them to liability on this theory. Nor are they subject to § 1983 liability on a respondeat superior theory. Tlamka, 244 F.3d at 635.

after arriving a few minutes later and attempting to revive Steven, radioed Rhodes. Rhodes arrived soon afterwards and promptly transported Steven in a truck to the prison infirmary. There is no evidence that would support a finding of deliberate indifference toward Steven's medical condition on the part of Andrews, Teal, or Rhodes.

In sum, considering all the admissible evidence in the summary-judgment record, Mays has failed to create a genuine issue of material fact as to whether a reasonable officer would have known he was violating Steven's Eighth Amendment rights either before or after his collapse. We conclude that as a matter of law the officers' actions were objectively reasonable in light of what they knew at the time, and that they are entitled to qualified immunity. Accordingly, the decision of the District Court denying the officers qualified immunity is reversed and the case is remanded for dismissal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.