Dennis Scott CLINE, Plaintiff,

v.

UNION COUNTY, IOWA; Willard Von Tull, Deputy Sheriff, Union County Sheriff's Office; and John Coulter, Union County Sheriff, Defendants.

No. 4–99–CV–20528.

United States District Court, S.D. Iowa, Central Division.

Oct. 30, 2001.

Jeffrey S. Carter, Des Moines, IA, for plaintiff.

David J. W. Proctor, Sean M. O'Brien, Kristi V. Ralph, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, for Union County, Iowa and Willard Von Tull.

Arnold O. Kenyon, III, Anderson Werner Holm & Steffes, Creston, IA, for John Coulter.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

BREMER, United States Magistrate Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment, (Clerk's No. 8), filed June 5, 2001. Plaintiff, Dennis Scott Cline, asserts state claims for false arrest, malicious prosecution, and intentional infliction of emotional distress, and federal claims under 42 U.S.C. § 1983 for violation of his rights under the Fourth, Fifth, and Fourteenth Amendments. The parties consented to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c).

Defendants—Union County, Iowa; John Coulter, Union County Sheriff; and Willard Von Tull, Union County Deputy Sheriff—move for summary judgment on the basis that Cline has not made a showing sufficient to establish the elements essential to his claims, Defendants are immune from liability under Iowa Code § 760.4(3) (2001), Defendants are entitled to qualified immunity under section 1983, and Cline has not established his section 1983 claim against Defendant Union County.

Cline filed his Resistance on July 27, 2001. Defendants filed a Reply on September 17, 2001. A hearing was held on September 25, 2001. This matter is fully submitted.

### I. STANDARD FOR SUMMARY JUDGMENT

A court shall grant a motion for summary judgment only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must consider the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To preclude the entry of summary judgment, the nonmovant must make a showing sufficient to establish the existence of every element essential to his case, and on which he has the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Reed v. ULS Corp.*, 178 F.3d 988, 989 (8th Cir.1999). When a motion is made and supported as required in Federal Rule of Civil Procedure 56(a), the adverse party may not rest upon the mere allegations or denials in his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. At the summary judgment stage, the court may not make determinations about the credibility of witnesses or the weight of the evidence. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. MATERIAL FACTS NOT IN DIS-PUTE

Unless otherwise indicated, the following facts are either undisputed or viewed in the light most favorable to Cline, the non-moving party.

Cline works as a contractor in Orient, Iowa. He asserts that in 1997, an employee, 18–year–old Bob Post, offered to sell him a used gun. Cline paid Post approximately $100 for the gun. Post told Cline about someone he knew who was quitting business and had used air compressors for sale. Cline bought a used air compressor from Post for approximately $100.

On September 12, 1997, Post's mother called the Union County Sheriff's Office and reported that Post had stolen an air compressor. The Sheriff's Office issued an arrest warrant for Post.

On September 15, 1997, a third party told Cline that the gun and air compressor he had bought from Post were stolen. Cline found Post and asked him to go with him to the Union County Sheriff's Office, where, on September 16, 1997, Deputy Von Tull arrested Post for theft of the air compressor and gun. Cline told officers he had no knowledge that the gun and air compressor were stolen. (Cline Aff. at 1.)

Sheriff Coulter and three deputies questioned Post and asked him to write a statement. Post contends that the officers kept telling him that if he did not cooperate, he, "would do at least 17 years in prison," but if he told them what they wanted to know, "they would make a deal that would be very favorable" to him. (Post.Aff.) Post asserts that because of the officers' threats, he changed his written statement several times until it said, "what they wanted it to say, which was that Denny Cline knew these items were stolen." *Id.* Post asserts he implicated Cline only after

police threatened him. *Id.* Specifically, Post's written statement contained the following information regarding Cline:

> On or about the 3rd of Sep[tember] Denny ask[ed] me Bob to get a[n] air [compressor]. I told him that it would be stolen. He told me to go ahead and get it. The same thing with the [ ]45 cal[iber] gun. I told him it was stolen. He told me when they ask if he [knew] the things were stolen to tell them he had [no] idea and to keep his name [clear]. He gave me 100.00 for the air [compressor] and 100.00 for the gun.

Defs.' Ex. 3.

Post also stated that 19–year–old Cory Brown, another of Cline's employees, participated in the thefts. On September 17, 1997, Union County officers arrested Brown and charged him with theft and conspiracy to commit theft. Brown stated that when he was arrested, and several times afterwards, the Union County Sheriff and his deputies interrogated him and told him that if he named Cline as ringleader of a theft conspiracy, Brown would receive a more favorable sentence than he would otherwise receive. (Brown Aff.) Brown refused to name Cline as ringleader, or to otherwise incriminate him, "because he was not involved in any of the thefts" in which Brown and his friends were involved. *Id.*

Cline gave officers the gun and air compressor he had bought from Post. Officers recovered other stolen items from various purchasers, none of whom the record indicates were arrested.

Cline said he would help Union County officials recover other objects stolen by Post and Brown. Cline talked with John Lovell, 17 years old, another employee, and learned he had a stolen four-wheeler to sell. Officers gave Cline a trailer and $1,000 in marked bills to buy Lovell's stolen four-wheeler. Cline arranged to meet

Lovell on September 18, 1997, to buy the four-wheeler, but Lovell did not show up. Later that day, Sheriff Coulter, assisted by Deputy Von Tull, arrested Cline. Adair County Sheriff, Fred Skellinger, accompanied Coulter during Cline's arrest. Cline and Skellinger have a long-standing animosity toward each other stemming from Cline's firing of Skellinger's good friend. During his arrest, Cline stated he was innocent, and he said he would be willing to take a polygraph test.

Officers arrested Lovell on September 23, 1997, on felony theft and conspiracy charges. (Defs.' Ex. 11.) Officers also filed criminal charges against Megan Berry, Brown's girlfriend. Officers recorded interviews with Berry and Lovell on September 25, 1997. (Defs.' Ex. 5 & 6.)[1] The parties dispute whether Berry's and Lovell's statements implicated Cline in theft. For the reasons discussed below, this dispute is not material to the Court's resolution of the present Motion.

After his arrest, Cline was released on bail. During the criminal proceeding against Cline, witness testimony incriminating Cline was recanted, and the charges against Cline were dismissed.

## III. ANALYSIS

### A. False–Arrest Claim

Cline alleges that Coulter and Von Tull arrested him without probable cause and intimidated witnesses into changing their statements to implicate Cline in criminal activity.

■ Iowa courts define false imprisonment as an unlawful restraint on freedom of movement or personal liberty. *Valadez v. City of Des Moines*, 324 N.W.2d 475, 477 (Iowa 1982). The elements of the tort are (1) detention or restraint against a person's will, and (2) unlawfulness of the detention or restraint. *Nelson v. Winnebago Indus. Inc.*, 619 N.W.2d 385, 388 (Iowa 2000). The elements of a false-arrest claim are identical to a false-imprisonment claim. *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984).

■ Under Iowa Code § 804.7, a warrantless arrest is authorized when a police officer has a "reasonable ground for believing" the person to be arrested has committed a crime. Iowa Code § 804.7(3). The "reasonable ground for belief" standard of Iowa Code section 804.7 is the same as probable cause. *State v. Harris*, 490 N.W.2d 561, 563 (Iowa 1992) (citing *Kraft*, 359 N.W.2d at 469). Probable cause exists when the facts and circumstances within the arresting officer's knowledge would warrant a person of reasonable caution to believe that an offense is being committed. *Harris*, 490 N.W.2d at 563 (citing *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)).

■ Facts that came to light after the arrest are irrelevant to the determination of whether probable cause existed at the time of the arrest. *Christenson v. Ramaeker*, 366 N.W.2d 905, 910 (Iowa 1985) (citing *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)); *see Children v. Burton*, 331 N.W.2d 673, 681–82 (Iowa 1983). When the circumstances known to an officer at

1. Referring to the transcripts of interviews with Berry and Lovell contained in Exhibits 5 and 6, Defendants claim the interviews took place on September 18. (Defs.' Statement Undisputed Mat'l Facts at 3.) During Lovell's interview, however, the date is noted as September 25. (Defs.' Ex. 6 at 2.) Berry and her mother signed the juvenile waiver and parental consent form on September 25, 1997, and the transcript of Berry's interview reflects the reading and signing of the form. (Ex. 5 at 1, and Ex. 10.) Based on that summary judgment record, the Court finds the interviews of Berry and Lovell related to Exhibits 5, 6, and 10 took place on September 25, 1997.

the time would cause a reasonable person to doubt the veracity of an informant's statements, the existence of probable cause to make an arrest is a fact question. *Christenson,* 366 N.W.2d at 910–11 (affirming summary judgment for criminal investigator on claim of wrongful procurement of arrest warrant; although fact that informant lied came to light after arrest, no indication whatsoever indicated that when defendant filed complaint and affidavit charging plaintiff, he knew informant was lying, and no evidence suggested defendant acted in reckless disregard of truth in accepting informant's report that plaintiff and another person had burglarized apartment); *Kraft,* 359 N.W.2d at 470 (declining to hold as a matter of law that uncorroborated accusation of a single witness established probable cause for warrantless arrest, when circumstances known to arresting officers could cause reasonable person to doubt veracity or reliability of witness' incriminating statements).

■ In support of their contention that they had reasonable ground for believing Cline had committed a public offense, Defendants state that Post, Lovell, and Berry told them Cline knew the gun and air compressor he asked Post to procure and sell to him were stolen, and that Cline made threatening statements, or statements that could be construed as threats, to the three. Lovell's and Berry's statements to law enforcement officers occurred on September 25, 1997, seven days after Cline's arrest. At the time of Cline's arrest, Defendants did not know the contents of the future statements, and Post's was the only statement incriminating Cline. According to Post, he originally told officers that Cline had no involvement in the theft, but when the officers threatened him, Post changed his statement several times until he stated what the officers wanted him to say: Cline asked him to procure the compressor and gun and sell them, even if stolen, to Cline, and Cline

knew the items were stolen. (Post Aff.) Before Cline's arrest, Brown, too, told officers that to his knowledge Cline was not involved in any criminal activity, but unlike Post, Brown resisted the officers' pressure to implicate Cline in theft. (Brown Aff.) Post's affidavit raises a credibility issue. Based on the summary judgment record, Cline has raised a genuine issue of material fact concerning whether circumstances known to Defendants at the time of his arrest would cause a reasonable person to doubt the veracity of Post's statement, the only incriminating statement Defendants had before the arrest.

Viewing the record in the light most favorable to Cline, the Court holds he has produced sufficient evidence to raise a fact question concerning the existence of probable cause to make an arrest. *See Christenson,* 366 N.W.2d 905, 910–11; *Kraft,* 359 N.W.2d at 470. Defendants are not entitled to summary judgment on the claim of false arrest.

### B. Malicious–Prosecution Claim

■ The elements of malicious prosecution are as follows: (1) a previous prosecution; (2) instigation of that prosecution by the defendant; (3) termination of that prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff. *Whalen v. Connelly,* 621 N.W.2d 681, 687–88 (Iowa 2000); *Wilson v. Hayes,* 464 N.W.2d 250, 259 (Iowa 1990).

Viewing the record in the light most favorable to Cline, the Court holds he has produced sufficient evidence to raise fact questions concerning the existence of probable cause, as discussed above, and the existence of malice. Defendants are not entitled to summary judgment on the claim of malicious prosecution.

## C. Intentional Infliction of Emotional Distress Claim

■ To support a prima facie claim for intentional infliction of emotional distress, the plaintiff must establish the following four elements: (1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress. *Fuller v. Local Union No. 106 of United Bhd. of Carpenters and Joiners of America*, 567 N.W.2d 419, 423 (Iowa 1997).

Defendants argue that Cline has shown insufficient evidence to support his claim, including insufficient evidence of severe or extreme emotional distress.

■ Cline seeks damages based on loss of reputation and money, and on serious mental anguish, and psychological and emotional distress. (Compl. at 2.) Viewing the evidence as a whole and in the light most favorable to Cline, the Court holds he has generated fact questions that preclude—although by a slender thread—entry of summary judgment against him. The questions include, but are not limited to, whether the circumstances, including the time, place and publicity surrounding Cline's alleged false arrest and malicious prosecution, resulted in humiliation, worry, and shame sufficient to constitute severe or extreme emotional distress. *See Ahrens v. Ahrens*, 386 N.W.2d 536, 539–40 (Iowa Ct.App.1986) (reversing trial court's refusal to instruct jury on claim of intentional infliction of emotional distress; claim should have been presented to jury, when defendant husband caused wife to be falsely arrested and jailed for 2½ days after child custody dispute, and fact question existed concerning existence of severe mental stress and outrageous conduct); *cf.*

*Young v. Gormley*, 120 Iowa 372, 94 N.W. 922, 923 (Iowa 1903) (allowing recovery for shame and humiliation on claim for illegal arrest, and stating such recovery depended on circumstances of time, place, and publicity attending false arrest).

Viewed in the light most favorable to Cline, summary judgment is inappropriate on the claim for intentional infliction of emotional distress.

## D. Discretionary–Function Immunity

■ Generally, Iowa Code § 670.2 subjects municipalities to liability for their torts and those of their officers and employees. *Fettkether v. City of Readlyn*, 595 N.W.2d 807, 813 (Iowa Ct.App.1999) (citing *City of West Branch v. Miller*, 546 N.W.2d 598, 600 (Iowa 1996)). Iowa Code § 670.4 provides municipalities immunity from tort liability in several specific instances. Defendants maintain they are immune from liability under Iowa Code § 670.4(3), commonly known as discretionary-function immunity, which exempts from liability any claim based on "an act or omission of an officer or employee of the municipality, exercising due care ... or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion is abused." Iowa Code § 670.4(3) (2001); *see City of Cedar Falls v. Cedar Falls Comm. Sch. Dist.*, 617 N.W.2d 11, 18 (Iowa 2000). This statutory provision covers counties. See Iowa Code § 670.1(2) (defining "municipality" as including "county").

■ Iowa courts apply a two-step analysis to determine whether challenged actions fall within the discretionary-function exemption, asking (1) whether the action was a matter of judgment or choice for the acting employee, and (2) whether, if an element of judgment was involved in that

challenged conduct, the judgment was of a kind the discretionary-function exception was designed to shield. *Cedar Falls*, 617 N.W.2d at 19; *Goodman v. City of Le Claire*, 587 N.W.2d 232, 237–38 (Iowa 1998) (adopting two-step test from *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The parties have not cited, and the Court has not found in its independent research, any Iowa case addressing the issue of whether a warrantless arrest and prosecution without probable cause are a matter of judgment and the kind of judgment the discretionary-function exception was designed to shield.

■ Iowa courts consider relevant federal decisions interpreting the immunity provision in the Federal Tort Claims Act (FTCA) as persuasive authority in their interpretation of the immunity provision in Iowa Code § 670.4. *Gordon v. Ottumwa Comm. Sch. Dist.*, 115 F.Supp.2d 1077, 1084–85 (S.D.Iowa 2000); *Goodman*, 587 N.W.2d at 236. The discretionary-function exception "applies only to conduct that involves the permissible exercise of policy judgment." *Gordon*, 115 F.Supp.2d at 1085 (quoting *Berkovitz*, 486 U.S. at 539, 108 S.Ct. 1954).

Defendants argue that their actions in determining the facts to support Cline's arrest, investigating the facts, and choosing to arrest Cline fit within the scope of actions protected by discretionary-function immunity. Cline counters that Defendants are not entitled to immunity, because in arresting him without probable cause, Defendants did not exercise the due care required under section 670.4(3).

■ Arrest issues generally involve the permissible exercise of policy judgment and fall within the discretionary-function exception. *Deuser v. Vecera*, 139 F.3d 1190, 1195 (8th Cir.1998) ("Law enforcement decisions of the kind involved in making or terminating an arrest must be within the discretion and judgment of enforcing officers"). Here, however, Cline alleges that Defendants arrested and prosecuted him illegally, without probable cause. To conduct an illegal arrest or prosecution does not represent a choice based on plausible policy considerations. *See Caban v. United States*, 671 F.2d 1230, 1232–34 (2nd Cir.1982) (holding discretionary-function exception to FTCA claims did not protect arbitrary decision of INS agent to detain alien; noting that FTCA provision waived government's immunity from certain intentional-tort claims, including false arrest and malicious prosecution, committed by law enforcement officers, and that provision was designed to provide a "remedy against the Federal Government for innocent victims of Federal law enforcement abuses"); *Morales v. United States*, 961 F.Supp. 633, 636 (S.D.N.Y. 1997) (holding Drug Enforcement Agency agents were not entitled to discretionary-function immunity from claims of false arrest and malicious prosecution under FTCA, when disputed issue remained as to whether agents had probable cause to arrest state employees for obstruction of justice); *Wilson v. United States*, 767 F.Supp. 551, 552 (S.D.N.Y.1991) (noting, "claims for false imprisonment and malicious prosecution do not fall within the discretionary function exception"); *cf. Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995) (reversing district court's granting of summary judgment on issues of employee retention and supervision, holding that although such issues generally involve permissible exercise of policy judgment within discretionary-function exception, failure to act after notice of employees' illegal action did not represent choice based on plausible policy considerations).

The Court anticipates that Iowa courts would hold that the legislature did not intend to shield officers and municipalities

from liability for an illegal arrest and prosecution. *Cf. Fettkether,* 595 N.W.2d at 813 (stating Iowa Code § 670.4(12) immunizes "all officers and employees of municipalities from tort liability as to all claims exempted in section 670.4 unless actual malice or willful, wanton and reckless misconduct is proven."). Therefore, the unresolved probable-cause issue in this case renders summary judgment inappropriate.

## E. Section 1983 Claim

Defendants challenge Cline's claims under 42 U.S.C. § 1983 on the basis that Defendants are entitled to qualified immunity from money damages on the claims. Defendants also argue that Cline has not adduced sufficient evidence to establish the County's liability under section 1983.

As a preliminary matter, the Court assumes that Cline bases his section 1983 claim on his alleged false arrest, and not the alleged malicious prosecution. *See Albright v. Oliver,* 510 U.S. 266, 267, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (holding plaintiff had not stated a claim, when he brought a substantive due process claim charging malicious prosecution by detective who initiated criminal proceedings against him); *Technical Ordnance, Inc. v. United States,* 244 F.3d 641, 650–51 (8th Cir.2001) (holding agent who allegedly intentionally or recklessly made misstatements or omissions in his warrant affidavit was entitled to qualified immunity on § 1983 claim for malicious prosecution, when plaintiffs alleged they were forced to post bond, summoned to appear before court, and made to answer charges although prosecuted without probable cause; circuit had never held pretrial restrictions such as those alleged constituted Fourth Amendment seizure, and law was not clearly established).

## 1. Qualified Immunity

■■■■ Qualified immunity protects government officials from suit when their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sexton v. Martin,* 210 F.3d 905, 909 (8th Cir.2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In deciding whether an official is entitled to qualified immunity on a claim, a court must use the following two-part inquiry. *Saucier v. Katz,* 533 U.S. 194, ——, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). First, a court must consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.; see Tlamka v. Serrell,* 244 F.3d 628, 632 (8th Cir.2001) ("whether the plaintiff has alleged the deprivation of an actual constitutional right at all") (quoting *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). If no constitutional right would have been violated were the facts alleged established, the court need make no further inquiries, and the defendant would be entitled to qualified immunity. *Saucier,* 533 U.S. at ——, 121 S.Ct. at 2156; *see Tlamka,* 244 F.3d at 632.

If, on the other hand, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at ——, 121 S.Ct. at 2156. Under this step, a court must undertake its inquiry in light of the specific context of the case, not as a broad general proposition. *Id.*

"The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Id.* at 2159; *see Lambert v. City of Dumas,* 187 F.3d 931, 934 (8th Cir.1999) ("there must be no genuine issues of material fact as to whether a

reasonable official would have known that the alleged action violated that right").

At the summary judgment stage, a court determining qualified immunity must consider true those facts asserted by the plaintiff and properly supported in the record. *Tlamka,* 244 F.3d at 632 (citing *Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). A court cannot grant summary judgment on the qualified immunity issue, if a genuine dispute exists concerning predicate facts material to qualified immunity. *Id.* An official asserting qualified immunity has the burden of proving the defense. *Sanchez v. Taggart,* 144 F.3d 1154, 1157 (8th Cir.1998). When a defendant asserts qualified immunity, the plaintiff has the burden to show that a question of fact precludes summary judgment. *Yellow Horse v. Pennington County,* 225 F.3d 923, 927 (8th Cir.2000). Once predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law. *Tlamka,* 244 F.3d at 632.

The Court first determines whether Cline has alleged the deprivation of an actual constitutional right.

Cline's complaint alleges Defendants arrested and prosecuted him without probable cause. The Fourth Amendment protects persons from unlawful search and seizure. *See Eubanks v. Lawson,* 122 F.3d 639, 641 (8th Cir.1997). As the court found above, Cline has established genuine issues of material fact precluding summary judgment on his claims regarding illegal arrest. The Court finds that, taken in the light most favorable to Cline, the facts alleged could show Defendants' conduct violated his constitutional rights.

The Court next addresses whether the claims implicate clearly established law. At the time of the actions at issue, this Circuit's rule prohibiting an officer from arresting without probable cause was well established. *See Eubanks,* 122 F.3d at 641; *United States v. Miller,* 974 F.2d 953, 956 (8th Cir.1992). Viewing the facts and inferences in the light most favorable to Cline, the Court finds that any reasonable officer would have known that Defendants' actions in arresting Cline without probable cause would have violated Cline's constitutional rights. The Court holds that summary judgment must be denied on the claim for qualified immunity.

## 2. County's Liability

Under 42 U.S.C. § 1983, a municipality is not vicariously liable for the unconstitutional acts of employees. *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir.1999) (citing *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A municipality may, however, be liable for the unconstitutional acts of its officials or employees, when those acts implement an unconstitutional municipal policy or custom. *Id.* To establish municipal liability, a plaintiff must prove that a municipal policy or custom was the moving force behind the constitutional violation; only deliberate action by a municipality can meet the "moving force" requirement. *Id.* (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

A "policy" is an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.; see Ware v. Jackson County,* 150 F.3d 873, 880 (8th Cir.1998). Cline has not identified any official policy that arguably played a role in Cline's arrest. The Court therefore must determine if Cline has produced evidence from which a jury could reasonably find the existence of a relevant municipal custom. *See id.* To

prove a municipal custom exists, Cline must satisfy the following three requirements: (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to, or tacit authorization of, such conduct by the governmental entity's policy-making officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, that is, proof that the custom was the moving force behind the constitutional violation. *Id.*

Cline has offered no evidence that any previous arrests were illegal. Shortcomings in the investigation of Cline's alleged criminal activity do not demonstrate a "continuing, widespread, or persistent pattern of misconduct." *See id.* at 1205 (affirming grant of summary judgment for county; stating plaintiff offered no evidence that previous investigations similar to the incident in question were inadequate). "A single incident normally does not suffice to prove the existence of a municipal custom." *Id.*

Viewing the facts in the light most favorable to Cline, no material questions of fact are in dispute, and Defendant Union County is entitled to judgment as a matter of law.

## IV. CONCLUSION

Because genuine issues of material fact remain to be determined at trial, the Court denies Defendants' Motion for Summary Judgment, (Clerk's No. 8), on the state claims for false arrest, malicious prosecution, and intentional infliction of emotional distress; on the claim for immunity under Iowa Code § 670.4(3); and on the claim for qualified immunity with respect to the section 1983 claim based on false arrest. The Court grants the Motion on the issue of Union County's liability under section 1983.

Trial remains set for November 5, 2001, at 9:00 a.m. The Court sets a **status conference for 9:00 a.m., November 2, 2001, by telephone call placed by counsel for Plaintiff.** The Court may be reached at (515) 284–6200.

IT IS SO ORDERED.