# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-2419/99-2420

_____

| | | |
|---|---|---|
| Alan Ray Yellow Horse, | * | |
| Special Administrator of the | * | |
| Estate of Frederick Neal Yellow | * | |
| Horse, deceased, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Pennington County, South Dakota; | * | District of South Dakota. |
| Jill West, as Corrections Officer for | * | |
| Pennington County; Peggy Severson, | * | |
| as Deputy Sheriff of Pennington | * | |
| County, | * | |
| | * | |
| Appellees/Cross-Appellants. | * | |

_____

Submitted:  May, 10, 2000

Filed:  September 5, 2000

_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Alan Ray Yellow Horse (the estate) appeals the district court's[1] grant of summary judgment in favor of the Pennington County defendants (the county) in this 42 U.S.C. § 1983 action. We affirm.

Viewing the facts in the light most favorable to the estate, Alan Ray Yellow Horse's decedent, his brother Frederick Yellow Horse (Yellow Horse), served a thirty-day sentence for DUI in the Pennington County Jail. He was then transferred to the Human Services Center in Yankton for alcohol treatment. On August 24, 1994, one day before his discharge from the Human Services Center and transfer back to the county jail, Yellow Horse attempted to commit suicide by cutting his wrist with a sharp object. Yellow Horse was transferred back to Pennington County Jail the next day, and was placed on a suicide watch. Yellow Horse was removed from the suicide watch on August 27, returned to suicide watch on August 28, and was placed in a less secure area of the jail when he was again removed from suicide watch on August 29. Both times Yellow Horse was removed from suicide watch, Officer Peggy Severson decided to take Yellow Horse off suicide watch without consulting a mental health expert and without completing a suicide screening form. On September 6, 1994, two inmates alerted Deputy Jill West to problems in Yellow Horse's cell. When West unlocked Yellow Horse's cell, she discovered Yellow Horse had hanged himself. West performed CPR to no avail, and Yellow Horse was later pronounced dead at the hospital.

The administrator of Yellow Horse's estate, Alan Ray Yellow Horse, brought this section 1983 action, alleging the county and several officials violated Yellow Horse's constitutional rights by failing to maintain adequate suicide prevention policies at the jail and failing to adequately train its employees in suicide prevention. The estate also

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

sued Severson and West in their individual capacities, alleging they were deliberately indifferent to Yellow Horse's serious medical needs.

The district court granted partial summary judgment on qualified immunity grounds to Officer Severson and Officer West in their individual capacities. The district court also dismissed a state law negligence claim as barred by a South Dakota statute which provides the county officials and the county immunity from such suits.[2] The court further found the administrator of decedent's estate had standing to bring this action under section 1983. The district court later granted summary judgment to the county and its officers in their official capacity, and dismissed the lawsuit. The court found the county did not maintain customs or policies deliberately indifferent to a substantial risk of inmate suicide. Instead, the court noted Pennington County Jail had never previously had a successful suicide attempt and therefore did not have notice of any alleged inadequacy in its suicide prevention procedures. Further, the court found it was undisputed the county had a suicide prevention policy and that jailers were subject to lengthy initial training on inmate suicide, were trained to assess suicide risks, and were provided guidelines on how potentially suicidal inmates should be monitored. Finally, the court found that the Pennington County Jail had been recently evaluated and accredited by the American Correctional Association. In light of these several factors, the court held that each shortcoming in the county's policies and training alleged by the estate did not rise to the level of a constitutional violation.

Yellow Horse appeals both orders, arguing that Severson and West were not entitled to qualified immunity, and the county is not entitled to summary judgment. The county cross-appeals the district court's determination that the estate had standing to pursue the claim under the South Dakota wrongful death statute.

---

[2]See S.D. Codified Laws § 3-21-8 (Michie 1994)

We review de novo the district court's grant of summary judgment, drawing all inferences in favor of the non-moving party. See Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Lindsey v. Jewels by Park Lane, Inc., 205 F.3d 1087, 1091 (8th Cir. 2000).

### 1.    Standing

In its cross appeal, the county concedes that to the extent this case comprises a survival action, the administrator of the estate has standing to assert a claim under section 1983 as a result of the injuries to and the death of Yellow Horse. See Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995). However, the district court liberally construed the complaint as stating both survival and wrongful death claims, and found the estate had standing to bring both types of actions. The county argues the estate does not have standing to bring a wrongful death action because the decedent's civil rights claim is a personal cause of action cognizable only by the party whose civil rights have been violated.[3]

We have declined in the past to decide the precise issue of whether wrongful death actions may be asserted by family members as section 1983 claims. See Westcott v. Crinklaw, 133 F.3d 658, 660 (8th Cir. 1998) (record did not support characterization of suit as one for wrongful death, so not need to decide standing issue);

---

[3]In South Dakota, a wrongful death cause of action is brought in the name of the decedent's personal representative and seeks compensation for the decedent's next of kin for their pecuniary injury, rather than for an injury to the decedent himself. See S.D. Codified Laws §§ 21-5-5, 21-5-7. In contrast, a survival action is the decedent's own personal cause of action, which does not abate at decedent's death, but is brought by a representative seeking damages the decedent could have obtained for injuries had he survived. See Wiersma v. Maple Leaf Farms, 543 N.W.2d 787, 795 (S.D. 1996) (Amundson J., dissenting); S.D. Codified Laws § 15-4-1.

Frey, 44 F.3d at 671 (remanded to district court for full briefing and determination of standing issue in context of Missouri survival and wrongful death statutes). We see no need to decide the issue here either, because we construe the complaint as alleging only a survival action. In the complaint, the estate alleges that as a result of defendants' conduct, "Frederick Neal Yellow Horse, . . . prior to his untimely death, suffered extreme mental anguish, severe pain and suffering, including the emotional distress of knowing of his pending death, as well as other personal injuries, and his untimely and wrongful death." The relief sought is not compensation for decedent's next of kin for their pecuniary injury, but only damages for injuries to Yellow Horse. Accordingly, we find Alan, as administrator of Yellow Horse's estate, had standing to assert a claim under section 1983.

## 2.    Qualified Immunity

Whether qualified immunity shields a government official from suit is a question of law, which we review de novo. See Liebe v. Norton, 157 F.3d 574, 576 (8th Cir. 1998). When qualified immunity is claimed, it is the estate's burden to show that a material fact or question of law precludes summary judgment. See Williams v. Kelso, 201 F.3d 1060, 1064 (8th Cir. 2000). To prevail against the individual county officials, the estate must establish a violation of a clearly established constitutional right, and that no genuine issues of material fact exist as to whether a reasonable official knew her actions amounted to a constitutional violation. See Liebe, 157 F.3d at 577.

Yellow Horse had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to. See id. The question in this case is whether the jailers knew their actions amounted to a constitutional violation. To prove knowledge by the jailers, the estate has to show the jailers were deliberately indifferent to the known risk of suicide and Yellow Horse's serious medical needs. See id. Deliberate indifference is established if the jailers

"[knew] of and disregard[ed] an excessive risk to [Yellow Horse's] health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The estate cannot meet this burden. The estate complains Officer Severson should have consulted a mental health professional and completed a suicide prevention screening form before removing Yellow Horse from suicide watch. The record shows that Severson's routine practice for removing someone from suicide watch was that she would gather information by reviewing the contact journal, which contained information on the eating, sleeping and social habits of the inmate, and then interview and evaluate the inmate before removing him from suicide watch. The estate makes much of Severson's failure to specifically recall taking Yellow Horse off suicide watch. However, Severson's statement regarding this incident was taken a little over one year after the suicide, and her deposition was taken more than four years after the occurrence. Her failure to specifically remember taking Yellow Horse off suicide watch is hardly surprising in light of the intervening time between the suicide and the statements, and does not create a genuine issue of material fact. Severson testified that if she did, in fact, remove Yellow Horse from the watch, the aforementioned process would have been followed. The estate cannot show otherwise, and therefore cannot meet its burden of establishing a material fact which would preclude summary judgment in favor of Severson. See Kelso, 201 F.3d at 1064. Accordingly, we find Severson did not exhibit deliberate indifference by disregarding an excessive risk to Yellow Horse's health or safety. See Liebe, 157 F.3d at 578 (jailer who followed prison suicide prevention policy had taken deliberate steps to prevent suicide and was not deliberately indifferent); Rellergert v. Cape Girardeau County, 924 F.2d 794, 797 (8th Cir. 1991) (same).

The estate also asserts Officer West, the officer on duty at the time of the suicide, was deliberately indifferent for failing to make more timely cell checks, especially upon learning from other inmates that Yellow Horse was upset and talking about "heaven" and "hell." The undisputed evidence shows West maintained her

routine practice of checking the cells at regular intervals, and we find the inmates' warnings were not enough to put her on actual notice of an excessive risk to Yellow Horse's safety. Yellow Horse was no longer on suicide watch, and therefore Officer West was not deliberately indifferent simply because she did not single out Yellow Horse for more frequent cell checks. When West did find Yellow Horse, she performed CPR in attempt to revive him. The record does not indicate West knew of and disregarded an excessive risk that Yellow Horse would commit suicide. Accordingly, the district court did not err in granting West and Severson qualified immunity.

### 3. Pennington County

The estate also appeals the district court's grant of summary judgment in favor of the county and the officers in their official capacities. In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

The estate claims the county failed to maintain adequate suicide prevention policies. Specifically, the estate alleges the county's policies were inadequate regarding the procedure for removing a prisoner from suicide watch, how to supervise suicidal prisoners, and the failure to provide "refresher" suicide prevention courses for jail employees. The estate's complaints can be characterized and analyzed as failure to train claims. See Liebe, 157 F.3d at 578 (alleged failure of county to have adequate suicide prevention policies in place appropriately analyzed under failure to train standard set forth in City of Canton v. Harris, 489 U.S. 378, 388 (1989)). A municipality may be liable for failure to train its employees when that failure can be shown to be deliberate indifference to the rights of others. See Canton, 489 U.S. at 389.

The undisputed facts show that: (1) before officers are released to work on their own, they are required to complete training courses which include suicide prevention; (2) at the time of the suicide, in September 1994, Pennington County Jail was accredited by the American Correctional Association, which requires jails to have a suicide intervention policy; and (3) in July 1994, the county held a training session at the jail regarding suicide prevention. The county's suicide prevention policy provided that during a new inmate's intake procedures, the inmate was to be screened for possible suicide indicators such as drug or alcohol abuse, mental illness, or other strange behavior. Inmates who were already in jail and subsequently became suicidal could also be placed on suicide watch by any officer. Only a supervisor could remove an inmate from suicide watch, and before doing so, the supervisor would interview the inmate and review the inmate's records to determine if he had been eating, socializing, etc. Correctional officers on duty were to check on an inmate on suicide watch every thirty minutes. Officers were trained to note significant events such as deaths in the family, divorces, and unfavorable court rulings which might trigger suicidal tendencies in inmates. The policy was reviewed annually by the officers, and also periodically reviewed by prison medical staff. In light of these facts, we find the district court was correct in holding the county's policy did not show deliberate indifference to the rights of others. The policy was reasonable and comprised an effort to prevent suicides rather than deliberate indifference to the possibility of suicides. See Liebe, 157 F.3d at 579; Rellergert, 924 F.2d at 797.

Accordingly, we affirm the judgment of the district court.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. To me, the record in this case demonstrates there is a genuine issue of material fact as to whether defendants were deliberately indifferent to Yellow Horse's known risk of suicide, and the district court erred in granting summary judgment.

While undergoing alcohol treatment at the Health Services Center in Yankton, Yellow Horse tried to hang himself using an electrical cord on August 1, 1994. On August 24, he tried to kill himself by cutting his wrist. He told doctors he felt guilty and depressed about authorizing the termination of his mother's life support systems one year previously. Shortly after returning to the Pennington County Jail, Yellow Horse asked one of the staff members about the best way to kill oneself. He talked about cutting his wrists and asked the staff member "which way was better, across the arm or up the arm." This resulted in Yellow Horse's placement on suicide watch until August 27. On August 28, he was again placed on suicide watch only to be removed two days later. None of the decisions about removing Yellow Horse from suicide watch were made by or in consultation with a mental health professional, nor did Pennington County's policy on suicide prevention prescribe procedures for removing an inmate from suicide watch.

On September 6, 1994, the day of Yellow Horse's death, an inmate told Jill West, the correctional officer on duty in Yellow Horse's cell block, that Yellow Horse had been crying and talking about heaven and hell. However, West did not place Yellow Horse on suicide watch, increase the frequency of her cell checks, or take any other responsive action until later that evening when two inmates called for her assistance, asserting there was a problem in Yellow Horse's cell. By the time West went to Yellow Horse's cell to investigate, he had already committed suicide by hanging himself.

From the time Yellow Horse returned to the Pennington jail on August 25 until the time of his September 6 suicide, he was not screened for potential suicide risk or evaluated by a qualified mental health professional even though county correctional officers knew that Yellow Horse had twice attempted suicide in the past month and that Yellow Horse talked about committing suicide at the Pennington jail.

To me, these facts are sufficient to require denial of the motion for summary judgment and to remand the case for trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.