Steven **RADLOFF**, Plaintiff,

v.

**CITY OF OELWEIN, Jesse Paul, John Reege, and Curt Wilkinson,** Defendants.

No. C02–2029.

United States District Court,
N.D. Iowa,
Eastern Division.

May 19, 2003.

J. Richard Johnson, Matthew James Reilly, White & Johnson, PC, Cedar Rapids, IA, for plaintiff.

Beth E Hansen, Swisher & Cohrt, PLC, Waterloo, IA, for Defendants.

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the defendant's April 1, 2003 motion for summary judgment (docket number 10) and the plaintiff's April 1, 2003 motion for partial summary judgment (docket number 14). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c). For the reasons set forth below, the defendant's motion is granted in part and denied in part and the plaintiff's motion is denied.

In this case, the plaintiff, Steve Radloff, alleges that the defendants, Officers Jesse Paul, John Reege, and Curt Wilkinson, violated his Fourth Amendment rights when they unreasonably entered and searched his home without a warrant and used excessive force during an unlawful seizure and that the policies and/or customs of the City of Oelwein were a cause of this constitutional violation. The plaintiff also raises a state law assault and battery claim against the officers. The defendants move for summary judgment arguing: (1) they are entitled to qualified immunity with respect to the plaintiff's claims under 42 U.S.C. § 1983; (2) the entry and search of the plaintiff's home were based on probable cause and exigent circumstances; (3) the amount of force used to seize and arrest the plaintiff was objectively reasonable under the circumstances; (4) there is no evidence that the City of Oelwein had any policy or custom which could serve as the basis for imposition of liability under 42 U.S.C. § 1983; and (5) the City of Oelwein is entitled to summary judgment with respect to the plaintiff's claims for punitive damages. The plaintiff moves for partial summary judgment arguing: (1) there was no basis for the warrantless entry into the plaintiff's home; and (2) the excessive force used by Officers Paul and Wilkinson

against the plaintiff was unreasonable under the circumstances.

### Summary Judgment: The Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir. 1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prod., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman,* 827 F.2d 346, 350 (8th Cir. 1987).

### Statement of Material Facts

At all material times, the plaintiff was a resident of Oelwein in Fayette County, Iowa. At all material times, defendants Jesse Paul, Jon Reege and Curt Wilkinson were employed by defendant City of Oel-

wein as police officers. At the time of the incident on May 12, 2000, the plaintiff lived with his wife and his two sons.

On Friday, May 12, 2000, the plaintiff and his wife learned that their younger son Mark was planning to have some friends come to their house that evening. The plaintiff understood that there would be alcohol at the party and knew that Mark and several of his friends were underage. The plaintiff and his wife kept beer in a refrigerator downstairs and routinely allowed Mark to drink at home.

After having two beers earlier that afternoon at some local bars, the plaintiff resumed drinking beer at his home around 8:00 or 8:30 that night. Mark's guests began to arrive around 8:00 p.m. Several of the guests congregated on the deck in the back of the house.

That evening, Officers Paul and Wilkinson were on duty as patrolmen and Officer Reege was on duty as a probationary officer undergoing field training under the supervision of Officer Wilkinson. At 11:27 p.m., the Oelwein Police Department received a complaint from an unidentified female that there were juveniles consuming alcohol at or in the area of the plaintiff's residence. After receiving this complaint, the police dispatcher radioed the information to Officers Paul, Wilkinson, and Reege, the only officers on duty that night. Upon receipt of the call, Officers Paul and Reege proceeded to the plaintiff's residence and arrived there at 11:40 p.m. They parked the car away from the residence and walked directly north to observe what was going on. Officer Paul observed about a half-dozen to a dozen people on the deck and noted that they were "pretty loud." At 11:45, Officer Paul called for assistance. Officer Wilkinson responded and arrived at the scene at 11:48 p.m.

As Officers Paul and Reege started to approach the deck, they could see beer bottles and cans on the railing, however, they could not recall seeing any of the people drinking the beer or with beer in their hands. As the officers approached, some of the people on the deck ran away and some ran into the house. Officer Paul sent Officer Reege around to the front of the house and he then proceeded to go onto the deck. Officer Paul saw Brian Goede, whom he knew to be a minor, drinking beer inside the house through the kitchen window. Mark Radloff had approximately 10 beers that evening but Mike Radloff, the plaintiff's older son, had not been drinking. Mark told Officer Paul that he could not enter the house without a warrant but Officer Paul responded that he could and he proceeded to enter the house through the back door into the kitchen.

When the plaintiff learned that the police had arrived, he went into his bedroom. When Mike Radloff realized the police were in the house, he went into his parents' bedroom to inform them. The plaintiff and his wife told Mike to deal with the police while they remained in their bedroom.

As Officer Paul walked towards the living room, he heard a noise in the garage, opened the door, and saw Brian Goede run out of the garage. Officer Paul then went back into the living room and down the hallway. As he proceeded down the hallway, Officer Paul opened a closed door and found the plaintiff and his wife sitting on their bed fully clothed with the lights off. The plaintiff had consumed approximately six to eight beers that evening. The plaintiff asked Officer Paul what he was doing in the house, but Officer Paul did not answer. Officer Paul proceeded to search the bedrooms and closets with his flashlight. He then headed into the living room and basement with the plaintiff following him. While the plaintiff was following Officer Paul around the house, he was using

obscenities and told him "to get his fat a* * out of our house" and to get his "f* * *ing a* * out of our house." Officer Paul found another juvenile in the basement and brought him upstairs into the living room. When Officer Paul came upstairs, he informed the plaintiff that they would contact him at a later date if any charges would be filed. The plaintiff and his son Mark were in the living room yelling and swearing at Officer Paul while Mike was trying to calm them down. Officer Paul then went outside.

In the meantime, Officer Wilkinson was attending to the people in the backyard. He brought the individuals from the backyard out to where his car was parked in front of the house. While he was doing this, Jessica Levendusky, a minor, left the group and went inside the house. Officer Wilkinson got identification from the people outside. He also asked the individuals about who purchased the alcohol but he does not recall what was said. Mark Radloff was speaking with Officer Reege about 20 feet away from the front door.

Officers Paul and Wilkinson returned to the front door and asked for Jessica Levendusky to come outside. The plaintiff told Officer Wilkinson that he knew the law and the officers could not enter his home and continued yelling obscenities. Officer Wilkinson responded, "We don't need a warrant, we're investigating a crime, and she needs to come outside." Mark Radloff stepped in front of them and told them they were not coming back inside. When the officers were told that Jessica Levendusky was not inside, Officer Paul told Mark that if he did not move out of the way and let him in the house, he would be arrested. Mark moved out of the way and Officers Paul and Wilkinson reentered the house. Jessica Levendusky was eventually produced.

Once the officers were back inside the house, the plaintiff again yelled at the officers using obscenities and told them to get out of his house. The plaintiff was "telling them you f* * *ing pigs can't be in this house without a search warrant" and "just kept arguing with them" and threatened to sue. The plaintiff then pointed to the door and told Officer Paul "to get the f* * * out of our house" and "to get his fat a* * out of my house."

At that point, Officer Paul said "that's it" and grabbed the plaintiff's right wrist, swung him around and threw him head-first into a loveseat. Officer Paul put his knee onto the plaintiff's back while holding his right arm. Officer Wilkinson then came over to pull the plaintiff's left arm from under his body so he could be handcuffed. The plaintiff told Officer Paul that he was breaking his back and the plaintiff's wife and sons were telling the officers they were hurting him but the officers continued trying to handcuff him. The officers picked the plaintiff up and walked him outside the house and to the patrol car. When they got to the patrol car, the plaintiff told the officers that he was not getting in and planted his feet to resist. Officer Paul then lowered the plaintiff's head and pushed him into the back seat. The officers never drew weapons or had anything in their hands during their search of the house and arrest of the plaintiff.

At 12:01 a.m. on May 13, 2000, Officer Paul reported that he had the plaintiff in custody for interference, resisting arrest, and supplying alcohol to minors. While the plaintiff sat in the patrol car, the officers proceeded to record license numbers of cars in the vicinity and reported those numbers by police radio at 12:14 a.m. Officers Paul and Reege transported the plaintiff to the city jail where he was held until 1:37 a.m.

The plaintiff entered a plea of guilty to a charge of supplying alcohol to minors.

Three individuals were charged with possession of alcohol under the legal age. The plaintiff alleges that he suffered permanent injury to his neck as a result of the incident on May 12, 2000.

### Conclusions of Law

#### Qualified Immunity

A government official who performs discretionary functions is protected from suit under the doctrine of qualified immunity as long as the official's conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). In order to lose qualified immunity, a state official must violate a person's clearly established constitutional rights. *Brown v. Nix*, 33 F.3d 951, 953 (8th Cir. 1994) (quoting *Mahers v. Harper*, 12 F.3d 783, 785 (8th Cir.1993)). The contours of a clearly established right must be sufficiently clear that a reasonable official would understand what conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The test "focuses on the objective legal reasonableness of an official's acts." *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S.Ct. 2727.

For the law to be clearly established, it is only necessary that the unlawfulness of the official's act be apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. 3034. The proper inquiry is an objective, fact-specific question determined by examining the facts at issue under clearly established law at the time. *Sellers By and Through Sellers v. Baer*, 28 F.3d 895, 899 (8th Cir. 1994) (citing *Anderson v. Creighton*, 483 U.S. at 641, 107 S.Ct. 3034). The Eighth Circuit Court of Appeals has made clear that the appropriate level of inquiry focuses on the factual circumstance presented to the official at the time of his actions. *See, e.g., id.* at 900.

To withstand a motion for summary judgment on the basis of qualified immunity, a plaintiff must:

> (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.

*Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.1996) (citing *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir.1993)). A court must generally view the facts in a qualified immunity claim in the light most favorable to the party asserting the injury. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). When a defendant asserts qualified immunity, the plaintiff has the burden to show that a material fact or question of law precludes summary judgment. *Yellow Horse v. Pennington County*, 225 F.3d 923, 927 (8th Cir.2000). Once it is determined that the relevant predicate facts are not in dispute, the question of whether an officer's conduct violated a clearly established right becomes a question of law. *Pace v. City of Des Moines, Iowa*, 201 F.3d 1050, 1056 (8th Cir.2000). "The conduct was either 'reasonabl[e] under settled law in the circumstances' or it was not, and this is a determination of law that should be made at 'the earliest possible stage in litigation.'" *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). If there are disputes concerning predicate facts material to the qualified immunity determination, summary judgment is not appropriate. *Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994) (citations omitted).

*Unlawful Entry and Search*

 The Supreme Court has recognized as "a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "[A] search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show . . . the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Exceptions to the warrant requirement are few and the police bear a heavy burden when attempting to demonstrate an urgent need that may justify warrantless searches or arrests. *Welsh v. Wisconsin,* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (internal citation omitted).

The officers argue that they had probable cause to enter the house and also that exigent circumstances existed. The question in this case is not whether there were actual probable cause and exigent circumstances but whether the officers could reasonably have thought so. *See Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable. The same is true of their conclusions regarding exigent circumstances." *Id.* (citation omitted).

 The court finds that the officers reasonably could have believed that they had probable cause to enter the house without a warrant based upon their observations and knowledge. Officer Paul saw an individual he knew to be a minor drinking a beer in the kitchen and he also observed several other individuals run away or into the house after the officers arrived. Probable cause does not require "an actual showing of [criminal] activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The qualified immunity determination depends on an assessment of what an objectively reasonable police officer could believe under governing law and the factual circumstances. *See Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034. The plaintiff has not raised a genuine issue of fact as to whether the officers would have known their conduct would have violated the plaintiff's clearly established rights.

 With probable cause to believe that there was underage drinking inside the house, the police were permitted to enter the plaintiff's residence if one or more of the well-delineated emergency exceptions to the warrant requirement applied. The defendants argue that exigent circumstances existed, specifically, destruction of evidence and the dangers of underage drinking. The exigent circumstances exception extends to situations in which evidence is about to be destroyed. *See United States v. Pierson,* 219 F.3d 803, 805–06 (8th Cir.2000); *United States v. Ball,* 90 F.3d 260, 263 (8th Cir.1996). In addition, dangerous situations in which safety is threatened is a well identified exigency. *See Michigan v. Tyler,* 436 U.S. 499, 509–10, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *United States v. Boettger,* 71 F.3d 1410, 1415 (8th Cir.1995).

The officers could have reasonably believed that exigent circumstances existed in this case to enter the house. The Supreme Court has noted its "hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue . . . when the underlying offense for which there is probable cause to arrest is relatively minor." *Welsh v. Wisconsin,* 466 U.S. at 750, 104 S.Ct. 2091. "When

the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Id.* The Supreme Court held in *Welsh* "that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Id.* at 753, 104 S.Ct. 2091. However, the Court declined to say that there could be no warrantless home arrests for a misdemeanor. *Id.* at 749, 104 S.Ct. 2091. "Because we conclude that, in the circumstances presented by this case, there were no exigent circumstances sufficient to justify a warrantless home entry, we have no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses." *Id.* at 749 n. 11, 104 S.Ct. 2091.

Different jurisdictions interpreting the exigent circumstances exception in light of *Welsh* in the context of an underage drinking party have reached conflicting conclusions. Some courts have found that the warrantless entry of a home during a teenage drinking party was justified where the police knew the evidence could be easily destroyed and the partygoers were aware of police presence. *See, e.g., State v. Jangala,* 154 Or.App. 176, 961 P.2d 246, 247–48 (1998). Other courts have held that a warrantless entry of a home to make arrests for consumption of alcohol by minors was not permitted by exigent circumstances because the suspected offense was a nonviolent misdemeanor. *See, e.g., People v. Olson,* 112 Ill.App.3d 20, 67 Ill.Dec. 663, 444 N.E.2d 1147, 1150 (1983).

Under the circumstances of this case, the officers are entitled to qualified immunity on the plaintiff's claim of unreasonable entry and search of the house. It was not clearly established law that an officer could not enter a house where there were known minors drinking alcohol inside. The officers saw minors drinking inside the house and also saw some run into the house after they had arrived. An objectively reasonable officer under such circumstances could have concluded that once police presence was known, the partygoers would flee and evidence would be destroyed or concealed if the officers waited for a warrant. The officers also could have found from their training and experience that the threat to the lives of the juveniles and others was great after a night of underage drinking. In fact, the *Welsh* court found that "the prevention of drunken driving" may be "of major concern to the States." *Welsh v. Wisconsin,* 466 U.S. at 754 n. 14, 104 S.Ct. 2091. It was not clearly established law that when known minors are consuming alcohol, officers could not go into the residence to apprehend them or to determine the source of the alcohol and the plaintiff is unable to point to any cases that show it was clearly established. This court cannot conclude that only a "plainly incompetent" policeman would have thought the entry and subsequent search and arrest were permissible at the time. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). An objectively reasonable police officer could have believed that his entry into the house was lawful given the circumstances and the officers are therefore entitled to qualified immunity on this claim.

It should also be pointed out that after entering the house, the officers checked the bedrooms and closets for minors drinking alcohol. Only places where minors could be hiding were searched. The officers needed to account for those present who could be in danger or who could potentially destroy evidence. The subse-

quent search was limited in time and scope and, therefore, was permissible.

■] To the extent the plaintiff claims that the officers arrested him without probable cause, his claim must fail. Clearly, being arrested without probable cause would violate the Fourth Amendment, and the Eighth Circuit has squarely held that there is "a clearly established right under the Fourth Amendment not to be arrested unless there was probable cause for [the] arrest." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.1996). However, the Eighth Circuit has also held that " 'where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.' " *Malady v. Crunk*, 902 F.2d 10, 11–12 (8th Cir. 1990) (quoting *Cameron v. Fogarty*, 806 F.2d 380, 389 (2d Cir.1986)). In this case, the plaintiff pleaded guilty to supplying alcohol to minors and therefore, his § 1983 action regarding lack of probable cause for arrest is precluded.

### Excessive Force

■ The plaintiff also claims the officers used excessive force against him during his arrest. When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The proper test for evaluating an excessive force claim is, therefore, one of objective reasonableness. *See id.* at 397, 109 S.Ct. 1865.

■ This objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. In applying the objective reasonableness test, the Supreme Court has cautioned that, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is constitutionally unreasonable. *Id.* at 396, 109 S.Ct. 1865 (quotation omitted). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. When an arrestee resists, some use of force by the police is reasonable. *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir.1990).

■ The officers are not entitled to qualified immunity on the plaintiff's claim of excessive force. The right against unreasonable seizure of one's person is clearly established law. There is a factual dispute regarding whether the plaintiff resisted the arrest. The plaintiff claims he never resisted arrest and never used any type of physical resistance against the officers. The officers assert that the plaintiff did resist arrest. It is clear that threats of litigation, profanity or other oblique, offensive language alone is not grounds for the officers to use force against the plaintiff to arrest him. If the plaintiff's conduct was nothing more than verbal outbursts, there is no qualified immunity available because the unreasonableness of applying force against the plaintiff would be apparent to the reasonably competent police officer. A genuine issue of material fact exists as to the reasonableness of the force used by the offi-

cers against the plaintiff. Accordingly, the officers are not entitled to qualified immunity on the plaintiff's excessive force claim.

### Municipal Liability

The Eighth Circuit Court of Appeals has observed that "a plaintiff seeking to impose [municipal] liability is required to identify either an official policy or a widespread custom or practice that caused the plaintiff's injury." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998) (citations omitted). The purpose of this is to ensure that a municipality is exposed to liability only for constitutional violations " 'resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " *Id.* (quoting *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). The plaintiff must prove that the alleged policy "was the moving force behind the constitutional violation." *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 799 (8th Cir.1998) (quoting *Jane Doe A. v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir.1990)).

Where official policy is lacking, municipal liability may be established under 42 U.S.C. § 1983 "through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality 'as to constitute a "custom or usage" with the force of law.' " *McGautha v. Jackson County, Mo., Collections Dept.*, 36 F.3d 53, 56 (8th Cir.1994) (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). To prevail under this theory, the plaintiff must show "that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Rogers v. City of Little Rock, Ark.*, 152 F.3d at 799 (citations omitted).

The court finds that the plaintiff has not shown that any of his constitutional injuries were the result of an official policy or widespread custom of the city of Oelwein for which it may held liable. Even viewing the facts in a light most favorable to the plaintiff, he has made no showing that the officers were acting pursuant to any express city policy or some unofficial custom. The affidavits provided by the plaintiff are insufficient to raise a genuine issue of material fact as to whether the city has a policy or custom tolerating inappropriate police behavior. The plaintiff's mere allegations fail to state a claim for which relief can be granted under § 1983 against the city of Oelwein. The defendants' motion for summary judgment on the plaintiff's claim against the city of Oelwein is granted.

### Punitive Damages

The court agrees with the parties that an award of punitive damages is not available against the city of Oelwein under 42 U.S.C. § 1983. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Therefore, the court will grant the defendant's motion for summary judgment on the plaintiff's claim for punitive damages against the city of Oelwein.

Upon the foregoing,

IT IS ORDERED that the defendant's motion for summary judgment (docket number 10) is granted in part and denied in part and the plaintiff's motion for summary judgment (docket number 14) is denied.