# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-1040

———————————————

Tina Smith, individually, and a Natural Mother and Lawful Heir of Raymond A. Smith, Jr., deceased

*Plaintiff - Appellant*

v.

Michael Kilgore, Member Kansas City Board of Police Commissioners; Alvin Brooks, Member Kansas City Board of Police Commissioners; Angela Wasson-Hunt, Member Kansas City Board of Police Commissioners; Michael Rader, Member Kansas City Board of Police Commissioners; Sylvester James, Member Kansas City Board of Police Commissioners; David Kenner, Member Kansas City Board of Police Commissioners; Darryl Forte, Chief of Police; Selvir Abidovic, Police Officer, # 5569; Christopher Krueger, Police Officer, # 5476; Christopher Taylor, Police Officer, # 5353; Andrew Keller, Police Officer, # 5576

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

————————

Submitted: February 12, 2019
Filed: June 11, 2019

————————

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

————————

BENTON, Circuit Judge.

Tina Smith, mother of Raymond A. Smith Jr., sued the Kansas City Chief of Police, the members of the Board of Police Commissioners, and officers Selvir Abidovic, Christopher Krueger, Christopher James Taylor, and Andrew E. Keller, alleging they violated her son's constitutional rights when two officers used deadly force against him. The defendants moved for summary judgment, which the district court[1] granted. Smith appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

About 4:00 P.M. on May 26, 2012, officers Abidovic and Keller were dispatched on a report of suspicious activity in a park. Officer Abidovic found two people nearly fitting the dispatcher's description, one later identified as Raymond Smith. Officer Abidovic approached the suspects, who began walking away. He yelled, "Stop, come talk to me!" Smith began running away from officer Abidovic, out of the park. Officer Abidovic chased him on foot. Officer Keller radioed dispatch about the pursuit. Officers Krueger and Taylor were dispatched to assist.

Chasing Smith into a parking lot, officer Abidovic saw a gun in his hand. He announced over dispatch radio, "He's armed!" He pointed his gun at Smith, shouting, "Drop the gun!" Smith did not drop it. As Smith was climbing over a chain-link fence, he fired a shot at officer Abidovic. Officer Abidovic then fired three shots at Smith. Officer Keller radioed dispatch, "Shots fired." From their patrol car, officers Krueger and Taylor found Smith on the other side of the fence. They saw him begin to raise his gun in their direction. Officer Krueger fired five shots at Smith. He fell to the ground. Officer Abidovic called for an ambulance. Smith died from the gunshot wounds.

---

[1]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

Smith's mother sued, alleging excessive force; battery; assault; negligent hiring and retention; wrongful death; failure to provide adequate medical care; and related *Monell* claims. The district court dismissed the negligent hiring and retention claim, and granted summary judgment for the defendant on all other claims.[2] Smith appeals the grant of summary judgment.

## II.

This court reviews a grant of summary judgment de novo. *See* **TCF Nat'l Bank v. Mkt. Intelligence, Inc.**, 812 F.3d 701, 707 (8th Cir. 2016). "Summary judgment should be granted when—viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences—the record shows that there is no genuine issue of material fact." **Schilf v. Eli Lilly & Co.**, 687 F.3d 947, 948 (8th Cir. 2012), *citing* **Fed.R.Civ.P. 56(c)**. "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." **Id.** at 949, *citing* **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986). "There is a genuine dispute when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" **Dick v. Dickinson State Univ.**, 826 F.3d 1054, 1061 (8th Cir. 2016), *quoting* **Liberty Lobby**, 477 U.S. at 248.

Smith argues there is a genuine issue of material fact whether the decedent fired or pointed his gun at officers. The district court found as an undisputed fact that Smith fired at officer Abidovic. It based this conclusion on officer Abidovic's affidavit and the dashcam video from officers Abidovic and Keller's patrol car. Officer Abidovic states in his affidavit: "As Mr. Smith climbed over the fence, he

---

[2]The defendants raised qualified immunity in their answer to the complaint, but not in their motion for summary judgment. The district court did not address qualified immunity, and neither does this court.

pointed his gun at me, while I was about 20 yards away, and fired a shot at me." Smith argues this statement is contradicted by officer Keller's statement that he did not see the decedent point his gun at officer Abidovic. But officer Keller explains in his affidavit that he was not looking. When the decedent reached the fence, officer Keller reentered his patrol vehicle and began reversing the car to meet the decedent on the other side of the fence. Backing up, he heard gunshots. He reports hearing one gunshot, followed by several others that "sounded like return fire." According to his affidavit, he does not know who fired first. The dashcam audio captures the sound of a single gun shot, followed by three more. This audio is consistent with both officers' accounts.

Smith next argues that officer Abidovic's statement conflicts with the dashcam video because it does not show the decedent raising a gun toward officer Abidovic as he climbs the fence. When the shots are fired, only the decedent's legs are visible in the video. It therefore does not depict the decedent pointing his gun at officer Abidovic, nor does it negate this account. By pointing to the inconclusiveness of the video, Smith has failed to "set forth specific facts showing that there is a genuine issue for trial." **TCF Nat'l Bank**, 812 F.3d at 707, *quoting* **Liberty Lobby**, 477 U.S. at 256. Smith also contends that the dashcam video creates a genuine issue of material fact because though it shows the decedent running, it does not show a gun on his person. In the video, the decedent's left arm appears pinned to his side as if clutching something, but the video is grainy and a gun is not visible. The poor video quality does not create a genuine issue for trial. *See* **Mann v. Yarnell**, 497 F.3d 822, 827 (8th Cir. 2007) (rejecting argument that ambiguity in unclear video creates a genuine issue of material fact, because the video did not "demonstrably contradict[] material representations" by the moving party). Though the video is unclear, officers can be heard repeating the phrases "Drop the gun!" and "He has a gun!" These cries support the officers' statements that they saw a gun. Finally, a gun was recovered at the scene. The evidence does not create a genuine issue whether the decedent was armed.

The district court found as an undisputed fact that Smith started to raise his gun toward officers Krueger and Taylor. It based this conclusion on officer Krueger's affidavit: "Within a split second, before my patrol car came to a complete stop, I immediately saw Mr. Smith look at me, then start to raise his gun in my direction." Smith attacks the credibility of officer Krueger, asserting his multiple statements contradict each other and create a genuine issue for trial. In a 2012 statement, officer Krueger says he saw officer Abidovic chasing the decedent before the decedent began to raise a semiautomatic shotgun "in a threatening manner." At his 2017 deposition and in his 2017 affidavit, officer Krueger says he did not see officer Abidovic chasing the decedent. Whether he saw officer Abidovic chasing the decedent is distinct from the material inquiry: whether the decedent pointed his gun at officer Krueger. On this point, the evidence is consistent. In his 2017 deposition, officer Taylor testified that as he and officer Krueger approached the decedent, he pointed his gun at them. Officers Krueger and Taylor both say that when the decedent climbed the fence, he raised his gun in their direction. *See **Smith v. City of Brooklyn Park***, 757 F.3d 765, 773–74 (8th Cir. 2014) (alleged inconsistencies in officers' statements do not create genuine issue of material fact when multiple officer statements support the material fact that suspect was armed). Smith "may not stave off summary judgment armed with only the hope that the jury might disbelieve witnesses' testimony." ***Thompson v. Hubbard***, 257 F.3d 896, 899 (8th Cir. 2001).

Finally, Smith argues that the district court erred in discounting witness statements. The district court correctly held that witnesses' testimony that they did not see the decedent with a gun minutes before or after his confrontation with police does not create a genuine issue whether the decedent had a gun that he pointed and fired during his confrontation with police. Two eyewitnesses saw the confrontation. Florence Anderson told police she was across the street and down the block when she saw the decedent run through the parking lot, jump the fence, get shot, and fall to the ground. She did not see him with a gun, and she did not see anything in his hands. Another officer, Denny Mason, observed the shooting from a police helicopter. He

saw officers Abidovic and Krueger with their guns drawn. He saw something tucked under Smith's arm that could have been a gun.

The district court discounted these statements as double hearsay because they are witness statements recorded by officers in police reports. This court "review[s] the admission of evidence for consideration at the summary judgment stage for an abuse of discretion." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). "This deferential standard recognizes that the district court has a range of choices, and its decision will not be disturbed as long as it stays within that range, is not influenced by any mistake of law or fact, and does not reflect a clear error of judgment in balancing relevant factors." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 818 (8th Cir. 2010). The district court did not abuse its discretion in ruling that the reports containing Anderson's and Mason's statements are inadmissible double hearsay. *See United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006) (district court did not abuse discretion in ruling that police report documenting another's statements was inadmissible double hearsay).

Nor did the district court err in ruling that Anderson's and Mason's statements do not create a genuine issue for trial. "The district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993). "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon*, 684 F.3d at 793, *citing* **Fed.R.Civ.P. 56(c)(2)**. *See also Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 544 n.6 (8th Cir. 2018) (applying and quoting *Gannon*, overruling hearsay objection to summary judgment evidence not abuse of discretion, when information could potentially be presented in admissible form at trial). Though parties may identify evidence at summary judgment that would be inadmissible at trial, they must demonstrate that the evidence may be offered at trial in an admissible form. *See JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 737 (8th

Cir. 1995) (In "a successful summary judgment defense . . . [the non-movant] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations."). Here, Smith has "failed to obtain deposition testimony or affidavits from [those] who gave these unsworn accounts, and thus . . . has failed to provide any evidence from these sources that even potentially would be admissible at trial." *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001). This court reviews the record most favorably to Smith, but "do[es] not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay." *Id.*, *citing* **Fed R. Civ. P. 56(e)**.

No potentially admissible evidence in the record supports Smith's allegations that the decedent was unarmed, did not point his gun at officers, and did not shoot at an officer. The evidence does not present a sufficient dispute to require submission to a jury. *See* **Quick v. Donaldson Co.**, 90 F.3d 1372, 1376–77 (8th Cir. 1996), *quoting* **Liberty Lobby**, 477 U.S. at 251–52 (Summary judgment is appropriate when the evidence "is so one-sided that one party must prevail as a matter of law.").

III.

In light of Part II above, the district court correctly ruled that officers Abidovic and Krueger used reasonable force. The officers' use of deadly force was a seizure subject to Fourth Amendment reasonableness requirements. *See* **Tennessee v. Garner**, 471 U.S. 1, 7 (1985). "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." **Loch v. City of Litchfield**, 689 F.3d 961, 965 (8th Cir. 2012), *citing* **Garner**, 471 U.S. at 11. "[N]o constitutional or statutory right exists that would prohibit a police officer from using deadly force when faced with an apparently loaded weapon." **Sinclair v. City of Des Moines**, 268 F.3d 594, 596 (8th Cir. 2001) (per curiam). "As the Supreme Court has explicitly said, use of deadly force is permissible when the officer has probable cause to believe that the suspect poses a significant

-7-

threat of death or serious physical injury to the officer or others." *Id.*, *citing* *Garner*, 471 U.S. at 3.

Officers Abidovic and Krueger were reasonable in using deadly force. The decedent fired at officer Abidovic and began to raise his gun toward officers Krueger and Taylor. Either of these facts would justify deadly force to prevent harm to officers and others. An officer's use of deadly force is objectively reasonable against armed suspects who point their gun toward officers. *See* *Partlow v. Stadler*, 774 F.3d 497, 502–03 (8th Cir. 2014) (officer's use of deadly force objectively reasonable against armed suspect who refused commands to drop the gun and moved his shotgun in a way leading officers to believe he was aiming at them); *Aipperspach v. McInerney*, 766 F.3d 803, 806–07 (8th Cir. 2014) (officers' use of deadly force objectively reasonable against armed suspect who refused repeated commands to drop the gun, pointed it once at sergeant, and then waved it in direction of officers.). Here, the decedent posed a significant threat of death or serious physical injury to officer Abidovic when he fired at him, and to officers Krueger and Taylor when he began to raise his gun in their direction. It was objectively reasonable for officer Abidovic, then officer Krueger, to use deadly force under these circumstances.

Because officers Abidovic and Krueger used reasonable force, the district court properly rejected Smith's assault, battery, and wrongful death claims. *See* *Wright v. United States*, 892 F.3d 963, 967–68 (8th Cir. 2018) (Under Missouri law, officers can be liable for assault and battery only when they use unreasonable force), *citing* *Neal v. Helbling*, 726 S.W.2d 483, 487 (Mo. App. 1987); *Hassan v. City of Minneapolis*, 489 F.3d 914, 920 (8th Cir. 2007) (dismissing wrongful death claim upon finding that officers' use of deadly force was reasonable). The district court also properly rejected Smith's argument that officers Keller and Taylor are liable for failing to intervene. *See* *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009) (officers may be liable for failing to intervene in excessive force claim only when use of force is unconstitutional). Because there was no constitutional violation by

individual officers, the district court properly dismissed Smith's *Monell* claim.  *See* ***Sanders v. City of Minneapolis***, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability."), *citing* ***City of Los Angeles v. Heller***, 475 U.S. 796, 799 (1986) (per curiam).

## IV.

Smith argues that the district court erred by granting summary judgment on her claim that the officers failed to follow established policies and procedures for providing prompt medical care because questions of fact remain about who called Emergency Medical Services (EMS) and when.  The Fourteenth Amendment's Due Process Clause "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police."  ***City of Revere v. Massachusetts Gen. Hosp.***, 463 U.S. 239, 244 (1983).  Reviewing the dispatch radio and dashcam footage, the district court concluded that officer Abidovic called for EMS  "less than a minute" after Mr. Smith was shot.  There is no genuine dispute that the officers sought sufficiently prompt medical care.  Because the individual officers fulfilled their constitutional obligations, the Board and the Police Chief cannot be liable  for failing to train them.  *See* ***Carpenter v. Gage***, 686 F.3d 644, 651 (8th Cir. 2012), *citing* ***Heller***, 475 U.S. at 799.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____